IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DIANE ROHRER,                                    *

    Plaintiff,                                *

       v.                                  *        Civil Action No. RDB-12-00647

PEOPLE'S COMMUNITY                               *
HEALTH CENTERS, INC.
                                                 *
    Defendant.
\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## MEMORANDUM OPINION

Plaintiff Diane Rohrer ("Plaintiff" or "Rohrer") filed this disability discrimination action against Defendant People's Community Health Centers, Inc. ("Defendant" or "the Health Center") for alleged violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.* (Count I), Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 794 *et seq.* (Count II), and Article 49B § 14 of the Maryland Annotated Code, State Government §§ 20-601 *et seq.* ("Article 49B") (Count III).  Plaintiff also alleges a breach of contract and violation of personnel manual claim under Maryland law (Count IV).  Pending before this Court is the Health Center's Motion to Dismiss (ECF No. 5) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2011).  For the reasons that follow, Defendant's Motion to Dismiss (ECF No. 5) is GRANTED in part and DENIED in part.  Specifically, Defendant's motion is GRANTED with respect to Counts III and IV alleging Maryland state law claims, but is DENIED with respect to Counts I and II alleging violations of the Family Medical Leave Act and the Rehabilitation Act.

BACKGROUND

When considering a motion to dismiss under Rule 12(b)(6), this Court accepts as true the facts alleged in the plaintiffs' complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). In the context of a Rule 12(b)(1) motion to dismiss, "the court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (citation omitted).

Diane Rohrer ("Plaintiff" or "Rohrer") was hired as a Licensed Clinical Social Worker by People's Community Health Centers ("the Health Center") on January 2, 2008. Pl.'s Compl. ¶ 5, ECF No. 1. Approximately a month later, the Health Center promoted Rohrer to the position of Director of Behavioral Health.[1] *Id.* ¶ 6. The responsibilities of this new position were added to her prior patient caseload. *Id.* Sometime between February 2008 and March 2009, Rohrer also "became responsible for the development of the Mental Health program and the Substance Abuse program." *Id.* ¶ 8. However, during that period of time, her workload and her lack of prior administrative or managerial experience caused her to experience extreme levels of stress. *Id.* ¶¶ 7-8. When the anti-depressants prescribed by her primary care physician failed to resolve the situation, Rohrer sought the assistance of a psychiatrist, Dr. Raul Lopez-Muniz ("Dr. Lopez-Muniz"), on March 19, 2009, whom she then began to see on a monthly basis. *Id.* ¶ 7-9. During the same month, Rohrer saw her

---

[1] Rohrer alleges that she was promoted to the position of Director of Behavior Health despite informing the Chief Medical Officer, Dr. Lelin Chao, of her lack of administrative and managerial experience. Pl.'s Compl. ¶ 7, ECF No. 1.

responsibilities at work increase again when additional employees were placed under her direct supervision. *Id.* ¶ 10.

In April of 2009, Rohrer informed her supervisor, Dr. Lelin Chao, that her responsibilities were beginning to take a toll on her emotionally. *Id.* ¶ 11. The same month, however, she received her annual evaluation which contained "the highest possible ratings and included a glowing commentary." *Id.* ¶ 12. Rohrer was praised for her work and dedication to the Health Center as well as her patients. *Id.* Although her clinical hours were reduced, Rohrer continued to experience high levels of work-related stress. *Id.* ¶ 14. After a couple of months, she began to repeatedly tell her supervisor and the Director of Human Resources about her condition. *Id.* ¶¶ 13-14. In September of 2009, she even informed the Director of Human Resources that she had been seeing a psychiatrist and was taking anti-depressants. *Id.* ¶ 15. As Rohrer and Dr. Lopez-Muniz sought to find an effective treatment for her condition, it became necessary for her to take time off of work. *Id.* ¶ 16.

On October 19, 2009, Rohrer took a week off. *Id.* However, after returning to work her condition worsened. *Id.* ¶ 17. At that time, Rohrer began consulting with her supervisors about taking a longer leave as authorized under the Federal Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.* *Id.* ¶ 17. Her supervisors were sympathetic to her request and she was allowed to take FMLA leave from November 19 to December 19, 2009 as a result of a "chronic recurrent depression" condition. *Id.* ¶ 18-19. Although Rohrer agreed with her supervisors that upon returning from leave she would no longer hold the Director of Behavioral Health position, it was also allegedly agreed that she would resume

her clinical duties and occupy both the Director of Substance Abuse and the Licensed Clinical Social Worker positions. *Id.* ¶ 18. According to Plaintiff, occupying both positions would not have resulted in a demotion. Pl.'s Rep. to Def.'s Mot. to Dismiss at 2, ECF No. 8-1 (citing Pl.'s Compl. ¶ 18). On December 28, 2009,[2] having been declared "Fit for Duty" by Dr. Lopez-Muniz, Rohrer returned to the Health Center. Pl.'s Compl. ¶ 21. However, unbeknownst to her, another person had been hired to perform the Director of Substance Abuse duties. *Id.* ¶ 23. Consequently, she alleges that her reinstatement as a Licensed Clinical Social Worker represented a demotion.[3] *Id.* ¶ 22.

According to Plaintiff, it is at that time that "[t]hings began to change." *Id.* ¶ 23. Rohrer alleges that the CEO of the Health Center began to treat her as if she were not "mentally competent" to perform her duties. *Id.* She also alleges that her new supervisor, Loretta Wall ("Ms. Wall"), "made it clear that she did not want [her] on her staff." *Id.* at 24. Despite consulting with approximately 302 patients[4] during the month of March 2010, "at least double the amount of patients as allowed by the Maryland COMAR requirements,"[5] Plaintiff alleges that Ms. Wall continually emailed her about her caseload being very light. *Id.* ¶¶ 25-26. She was also allegedly forced to "submit daily progress notes, even though the

---

[2] Both parties do not dispute that this extended return dated was agreed upon. Pl.'s Compl. ¶ 21, *see also* Def.'s Mot. to Dismiss at 2, ECF No. 5. Defendant further notes, however, that although it "does not dispute that Plaintiff submitted the proper FMLA paperwork and notice . . . [should its motion be] denied, Defendant reserves the right to assert all available defenses, including the sufficiency of Plaintiff's paperwork and/or notice to take a leave of absence in accordance with the FMLA." Def.'s Mot. to Dismis at 2, n. 2.

[3] Defendant argues that "[d]espite Plaintiff's lessened workload and responsibility, she continued to receive her increased salary" commensurate with her previous role as Director of Behavioral Health. Def.'s Reply in Supp. of Mot. to Dismiss at 6, n. 3, ECF No. 9.

[4] Rohrer alleges that during the month of March 2010, the other four social workers only had 49, 90, 98 and 161 patients respectively. Pl.'s Compl. ¶ 26.

[5] Plaintiff does not cite to a specific regulation.

Maryland COMAR"[6] only imposed a deadline of 24-48 hours. *Id.* ¶ 27. Rohrer further claims that she began to feel as though the Health Center "was constantly figuring out ways to set [her] up to fail, mostly by creating an abnormally high workload . . . [forcing her] to spend nights and weekends, without compensation, working in order to finished her work." *Id.* ¶ 27. As a result, Rohrer claims that she "became increasingly concerned that the reason behind her different treatment was due to" her taking FMLA leave. *Id.* 28. She also alleges that she learned from an undisclosed source that the Health Center's CEO was "looking for a reason to fire her." *Id.*

Finally, on April 30, 2010, the Health Center terminated her employment alleging that the "budget crisis" required a workforce reduction. *Id.* ¶ 32. Her termination was effective immediately and she was "escorted out of the building" at that time. *Id.* Despite Rohrer's multiple requests and inquiries by the Maryland Labor Department, Rohrer alleges that she never received "back pay that was due, one month of severance pay, and her pay for unused vacation and personal leave time, amounting to approximately $14,000." *Id.* 37. She did however receive $2,089.02 from the Health Center with no explanation, but in an apparent response to the Maryland Labor Department's ruling that she was entitled to over $1,000 in reduced premiums which Defendant should have paid. *Id.*

In her Complaint, filed on February 29, 2012, Rohrer alleges that the Health Center's stated reason for her discharge was a pretext. *Id.* ¶ 33. According to her, the Health Center was not experiencing a budget crisis as employees had been advised in April of 2010 that the Health Center had received "its largest federal grant" in years. *Id.* ¶ 30. Moreover, Rohrer

---

[6] Plaintiff does not cite to a specific regulation.

alleges that, two days after being discharged, she learned through an undisclosed source that the Health Center was looking to hire someone to fill her position. *Id.* 33. A new social worker was apparently hired on May 6, 2012. *Id.* ¶ 34. Additionally, Rohrer was again made aware by an undisclosed source that the Health Center "was in the process of hiring four new clinical social workers as additional grant funding had been awarded. . ." *Id.* As a result, Rohrer alleges that she was discriminated against on the basis of both her mental health condition and the fact that she availed herself of her rights under the Federal Medical Leave Act ("FMLA").

## STANDARDS OF REVIEW

### I.     Motion to Dismiss pursuant to Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). This challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). With respect to a facial challenge, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799. Where the challenge is factual, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F3d at 192. "[T]he court may look beyond the pleadings and 'the jurisdictional allegations of the

complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (citation omitted).  A plaintiff carries the burden of establishing subject matter jurisdiction.  *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

## II.     Motion to Dismiss pursuant to Rule 12(b)(6)

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see also McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (Gregory, J., concurring) (citation omitted).  When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff."  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Simmons v. United Mort. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. Jan. 21, 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009).  Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  To survive a Rule 12(b)(6) motion, the legal

framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Id.* at 555. The Supreme Court has explained that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Twombly*, 550 U.S. at 556. Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 664; *see also Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011).

<u>ANALYSIS</u>

## I.      Plaintiff's Federal and Medical Leave Act Claim (Count I)

The Defendant Health Center ("Defendant" or "the Health Center") argues that Plaintiff Diane Rohrer's ("Plaintiff" or "Rohrer") Federal Medical Leave Act ("FMLA") claim in Count I should be dismissed for failure to state a claim upon which relief can be granted. Specifically, it alleges that the temporal connection element of a *prima facie* claim under the FMLA is not satisfied given that approximately five months elapsed between the date on which she took her FMLA leave and the date on which she was discharged. Plaintiff's response to this argument notes that the termination was the ultimate adverse employment action and that numerous adverse employment actions occurred prior to that time. Particularly, Plaintiff refers to being demoted to the Licensed Clinical Social Worker position on the date of her return from leave.

Under the FMLA, "an eligible employee[7] shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). It is unlawful for employers to (a) "interfere with, restrain, or deny the exercise of" this right, or (b) "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the Act]." 29 U.S.C. § 2615(a). A plaintiff can bring an interference claim under the first prohibition or a retaliation claim under the second one. *See Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006)

In this case, Plaintiff brought a retaliation claim for disability discrimination. "FMLA claims arising under the retaliation theory are analogous to those derived under Title VII and so are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973)." *Id.* at 551 (citing *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001)). Accordingly, Plaintiff must first establish a *prima facie* case of retaliation. *McDonnell Douglas Corp.*, 411 U.S. at 802. Second, the burden shifts to the employer to provide a non-discriminatory reason for the adverse action. *Id.* Finally, Plaintiff must then demonstrate that this reason is pretextual to sustain her claims. *Id.* at 804.

---

[7] "The term "eligible employee" means an employee who has been employed (i) for at least 12 months by the employer . . . ; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(a). Recently, this Court held that to state a claim under the FMLA, a complaint must demonstrate compliance with these requirements. *See Anusie-Howard v. Bd. of Educ. of Baltimore Cnty.*, WDQ-12-0199, 2012 WL 1964097 at *2-3 (D. Md. May 30, 2012). Although not explicitly stated in Plaintiff's Complaint, the facts it includes demonstrate that Rohrer was an eligible employee. First, she was employed since January 2, 2008 before seeking to take her FMLA leave in November 2009. Pl.'s Compl. ¶ 5, ECF No. 1. Second, the Complaint alleges that she took one week of leave in October 2009 and that she had a full patient caseload on top of her other responsibilities. *Id.* ¶¶ 8, 16. Considering the alleged facts in the light most favorable to the Plaintiff, *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997), Rohrer complied with the pleading requirements of demonstrating that she is an "eligible employee" under the FMLA.

To establish a *prima facie* case of retaliation under the FMLA, the Plaintiff must demonstrate (1) that she engaged in a protected activity, (2) that her employer took a "materially" adverse action against her and (3) that a causal connection existed between the activity and the adverse action. *Cepada v. Bd. of Educ. of Baltimore Cnty.*, 814 F. Supp. 2d 500, 514-15 (D. Md. 2011) (citing *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 68 (2006); *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543 (4th Cir. 2003)). This Court has held that an inference of a causal connection exists where the adverse action occurs "shortly after learning of the protected activity." *Cepada*, 814 F. Supp. 2d at 515 (citing *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)).

In this case, the parties do not dispute that Rohrer engaged in a protected activity when she availed herself of her rights under the FMLA due to her "chronic recurrent depression" diagnosis. The points of contention concern the adverse action this Court must consider and whether it satisfies the temporal causation requirement. While Defendant argues that the adverse action is the April 30, 2010 termination, Plaintiff contends that her demotion upon returning from leave along with the numerous pressures imposed on her by her supervisor in the following months should be considered as materially adverse.

At the end of leave, the FMLA provides for the employee's "restoration to the position held when the leave commenced or to an equivalent position." *Rodriguez v. Smithfield Packing Co.*, 545 F. Supp. 2d 508, 515 (D. Md. 2008) (citing 29 U.S.C. § 2614(a)(1)(A)-(B)). However, "an employee returning from FMLA leave has no right to restoration to her prior or an equivalent position where the person is 'unable to perform an essential function of the position because of . . . the continuation of a serious health condition.' " *Rodriguez*, 545 F.

Supp. 2d at 523 (quoting 29 C.F.R. § 825.214(b)).  This Court recently held, that an employee "has a right to reinstatement only if [she] was able to perform the essential functions of [her position] . . . when [her] FMLA leave expired." *Wilder v. Talbot County, Md.*, CCB-11-1019, 2012 WL 1901335 at *3 (D. Md. May 23, 2012) (holding that Defendant did not "necessarily" violate the FMLA where a Plaintiff was fired after the expiration of his FMLA leave period but before he was cleared to return to work by his physician.).

Plaintiff has alleged that although she voluntarily stepped down from the Director of Behavioral Health position, she was promised the Director of Substance Abuse and License Clinical Social Worker positions upon her return.  Plaintiff also alleged that Dr. Lopez-Muniz evaluated her as fit to resume her duties prior to the expiration of her leave period. Additionally, she alleges that upon returning to work, Defendant had given one of her positions to another employee and that she was effectively demoted to the Licensed Clinical Social Worker position.  Defendant does not dispute that Plaintiff was assigned to this position after returning from leave, but claims in a footnote in its reply brief that despite having this position, she received the same monetary compensation as when she held the Director of Behavioral Health position.  At this stage of the proceedings, however, this Court must consider the facts in the light most favorable to the Plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  Plaintiff has alleged that she was demoted as a result of taking FMLA leave and that her demotion occurred the day after her return from leave.  Accordingly, she has alleged sufficient facts to satisfy the temporal causation requirement.  Therefore, Plaintiff has established a *prima facie* case of retaliation under the FMLA.

Although the Defendant does not provide an otherwise non-discriminatory reason for Plaintiff's demotion or termination in its brief, Plaintiff has alleged that the reason given to her for her termination was pretextual.  Specifically, Plaintiff claims that the budgetary and reduction of force reasons were a pretext.  She goes on to allege that she received information concerning a large federal grant received by Defendant and its hiring of several social workers immediately after her termination.  Consequently, Plaintiff has stated a claim for retaliation under the FMLA against Defendant.  Therefore, the Defendant's Motion to Dismiss Count I of the Complaint is DENIED.

## II.     Plaintiff's Rehabilitation Act and Article 49B Claims (Counts II & III)

Count II of Plaintiff's Complaint alleges disability discrimination under Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 794 *et seq.* and Count III alleges the same under Article 49B § 14 of the Maryland Annotated Code, State Government §§ 20-601 *et seq.* ("Article 49B").  In moving to dismiss these claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure, Defendant contends that this Court does not have subject matter jurisdiction over these claims because Plaintiff failed to exhaust her administrative remedies and the statutes of limitations for filing administrative claims under both statutes have run.  In her Response, Plaintiff concedes that she failed to exhaust her administrative remedies.  Nevertheless, in a puzzling attempt to rescue her claims, Plaintiff contends that (1) where a statute does not contain an exhaustion requirement, this Court may use its discretion to waive such a requirement; and (2) if a statutory requirement to exhaust administrative remedies does exist, her claims may still be asserted under the futility exception.

As discussed below, the federal claim under Count II alleging a violation of the Rehabilitation Act does not mandate the exhaustion of administrative remedies. However, the state claim asserted under Count III alleging a violation of Article 49B clearly does mandate the exhaustion of administrative remedies. *See* Md. Code Ann., State Gov't § 20-1013 and 29 U.S.C. 794a(a). Accordingly, Defendant's Motion to Dismiss is DENIED as to Count II and GRANTED as to Count III.

    a. <u>Section 504 of the Rehabilitation Act (Count II)</u>

"Courts have uniformly held that non-federal employees need not exhaust administrative remedies before bringing a private action under Section 504 of the Rehabilitation Act." *Lucas v. Henrico Cnty. Sch. Bd.*, 822 F. Supp. 2d 589, 603 (E. D. Va. 2011) (internal footnote omitted). In fact, this Court recently explained that where plaintiffs were federal employees, claims of disability discrimination were properly brought under Section 501 of the Rehabilitation Act. *Reyazuddin v. Montgomery Cnty, Md.*, DKC-11-0951, 2012 WL 27241 at * 3 (D. Md. Jan. 4, 2012). In that context, the exhaustion requirements and filing procedures mirror those imposed on claims arising under Title VII of the Civil Rights Act of 1964. 29 U.S.C. § 794a(a). Accordingly, "[b]ecause Title VII requires plaintiffs to exhaust administrative remedies prior to bringing suit, individuals suing a federal employer under § 501 are also required to exhaust administrative remedies." *Reyazuddin*, 2012 WL 27241 at * 3. However, suits involving non-federal employees are, as in this case, properly brought under Section 504 of the Rehabilitation Act, which "has a 'broader reach' than § 501 because it 'bars both federal agencies and private entities that receive federal funding from discriminating on the basis of disability and is not limited to the employment context.' " *Id.*

(citing *Freed v. Consolidated Rail Corp.* ., 201 F.3d 188, 191 (3rd Cir. 2000)).  Section 504 of the Rehabilitation Act dictates that "[t]he remedies, procedures, and rights set forth in [T]itle VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d *et seq.*) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e-5), applied to claims of discrimination in compensation)" are available.  29 U.S.C. 794a(a).  "The procedures in those other statutes, adopted by reference, do not mandate exhaustion of administrative remedies."  *N.T. v. Balt. City Bd. of School Comm'rs*, JKB–11–356, 2011 WL 3747751, at *1 (D. Md. Aug. 23, 2011).  As such, non-federal employees are not required to exhaust administrative remedies with respect to their Rehabilitation Act claims brought under Section 504 of the Rehabilitation Act. *Reyazuddin*, 2012 WL 27241 at * 3.  Plaintiff Rohrer was not a federal employee and therefore was not required to exhaust administrative remedies before filing her Rehabilitation Act claim.

Section 504 of the Rehabilitation Act contains no statutorily-prescribed limitations period.  Consequently, this Court looks to the most analogous limitations period under Maryland law.  *Bd. of Regents of the Univ. of the State of New York v. Tomanio*, 446 U.S. 478, 484 (1980).  This Court has previously held that the applicable state law statute of limitations is three years.  *See Schalk v. Associated Anesthesiology Practice*, 316 F. Supp. 2d 244, 251 (D. Md. 2004) (holding "that the statute of limitations for Rehabilitation Act claims in Maryland is three years."); *Kohler v. Shenasky*, 914 F. Supp. 1206 (D. Md. 1995) (holding that Article 49B of the Maryland Code was not the state law most analogous to the [Rehabilitation] Act, and, accordingly, that its six-month statute of limitations should not apply).  Plaintiff filed her Complaint in this Court on February 29, 2012, and she was discharged from the Health

Center on April 30, 2010.  Accordingly, her Rehabilitation Act claim is not time barred.  As a result, this Court has subject matter jurisdiction over Plaintiff's Rehabilitation Act claim in Count II and the Defendant's Motion to Dismiss Count II of the Complaint is DENIED.

    b.  <u>Article 49B § 14 of the Maryland Annotated Code (Count III)</u>

As a preliminary matter, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).  However, Defendant argues that this Court lacks subject matter jurisdiction over Plaintiff's claim under Article 49B § 14 of the Maryland Annotated Code recodified in Section 20-601 *et seq.* of the State Government Article ("Article 49B").  Defendant also argues that this claim is barred by the relevant statute of limitations.

Article 49B provides that:

> [A] complainant may bring a civil action against the respondent alleging an unlawful employment practice, if (1) the complainant initially filed a timely administrative charge or a complaint under federal, State, or local law alleging an unlawful employment practice by the respondent; (2) at least 180 days have elapsed since the filing of the administrative charge or complaint; and (3) the civil action is filed within 2 years after the alleged unlawful employment practice occurred.

Md. Code Ann., State Gov't § 20-1013(a).  The initial complaint must be filed with the "Commission . . . within six months of the date on which the alleged discriminatory act occurred."  *Id.* § 20-1014(c)(1).  The term "Commission" refers to the Commission on Civil Rights.  Accordingly, "Plaintiff was required to first make an administrative complaint." *Hammonds v. Baltimore Cnty Bd. of Educ.*, WMN-11-3348, 2012 WL 787478 at * 2 (D. Md. Mar. 8, 2012).  Because Plaintiff did not file an administrative charge within six months of her discharge, she failed to satisfy the administrative exhaustion requirement.  The six month

time period having expired on October 30, 2010, Plaintiff is henceforth time barred from filing an administrative charge.  As a result, this Court lacks subject matter jurisdiction over Plaintiff's claim under Article 49B § 14 of the Maryland Annotated Code, State Government §§ 20-601 *et seq.*  Therefore, Defendant's Motion to Dismiss Count III is GRANTED and Plaintiff's claim in Count III is DISMISSED WITH PREJUDICE.

Alternatively, the Plaintiff has suggested that the "futility exception" applies in this case.  However, that exception is not applicable to statutorily imposed administrative exhaustion requirements.  Specifically, this Court previously held that the futility exception was not applicable where a plaintiff failed to comply with the requirement based on a suspicion that the case would come before this Court either way.  *Talbot v. U.S. Foodservices, Inc.*, 191 F. Supp. 2d 637, 641-42 (D. Md. 2002).  Furthermore, this Court has held that no "substantial support [exists] for the creation of a "futility" exception to the Title VII exhaustion requirement, and certainly no support [exists] for the assertion that the administrative process may be disregarded in its entirety."  *Murphy v. West*, 945 F. Supp. 874, 876-77 (D. Md. 1996).

Particularly telling is Plaintiff's reliance on only three cases to support her argument.  First, none of these cases involve the statutes under which Plaintiff brings her claims.  In *Beharry v. Ashcroft*, involving an alien's petition for writ of *habeas corpus* to avoid deportation, the United States Court of Appeals for the Second Circuit made clear that where Congress had imposed an exhaustion requirement in a statute, no exception was available.  329. F.3d 51, 56, 62 (2nd Cir. 2003) (considering the futility exception applicable only in the case where the exhaustion requirement is judicially imposed and stating that "statutory exhaustion

requirements are mandatory."). In *Bethesda Hospital Association v. Bowen*, the Supreme Court determined that the statutory scheme under the Medicare program of the Social Security Act allowed for a futility exception where a plaintiff had not first presented its challenge to a reimbursement claim to a fiscal intermediary. 485 U.S. 405-06 (1988) (noting that the statute imposed no such requirement). Finally, Plaintiff cites to *Honig v. Doe*, 484 U.S. 305 (1988) involving a suit by handicapped students against a school district for alleged violation of the Education of the Handicapped Act, now known as the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* Specifically, Plaintiff refers to the Supreme Court's determination that "parents may bypass the administrative process where exhaustion would be futile or inadequate." *Id.* at 326. However, taken in context, the Supreme Court in effect held that despite the failure to exhaust "consuming administrative remedies," Courts may grant injunctive relief to schools from the requirement that handicapped children not be removed from schools where they show that "maintaining the child in his or her current placement is substantially likely to result in injury either to himself or herself, or to others." *Id.* at 328. In sum, none of these cases are applicable here and the futility exception is not applicable to the administrative exhaustion requirement imposed by Article 49B.

## III.   Plaintiff's Breach of Contract and Personnel Manual Claims (Count IV)

In Count IV, Plaintiff alleges that the Health Center breached the terms of her employment contract and its personnel manual by (a) withholding Plaintiff's earned wages, (b) failing to provide a written notice ten days prior to her termination, and (c) failing to abide by provisions requiring the Health Center's compliance with both the Americans with Disabilities Act and the Federal Medical Leave Act. Defendant contends that this claim

must fail in light of the express liability waiver contained in the Employee Handbook. Specifically the Health Center's Employee Handbook states that "[n]o statement in these policies creates an express or implied contract of employment." Ex 1 to Def.'s Mot. to Dismiss, Emp. Handbook at 3, ECF No. 5-1. [8]   In her Response, Plaintiff presents a somewhat confusing argument.  She concedes that her claim for breach of employment contract should be dismissed but contends that she has pled sufficient facts to assert a claim of violation of the personnel manual given the lack of notice she received about her termination.

There is no question that the Plaintiff Rohrer was an at-will employee.  Under Maryland law, where an employment relationship is at-will, either party may legally terminate the relationship at any time. *See Adler v. American Standard Corp.*, 432 A.2d 464, 467 (Md. 1981).  An employee manual does not create an implied contract where it contains an effective disclaimer.  *See Dahl v. Brunswick Corp.*, 356 A.2d 221 (Md. 1976); *Fournier v. United States Fid. & Guar. Co.*, 569 A.2d 1299 (Md. Ct. Spec. App. 1990); *Castiglione v. Johns Hopkins Hosp.*, 517 A.2d 786 (Md. Ct. Spec. App. 1986); *Staggs v. Blue Cross of Md., Inc.*, 486 A.2d 798 (Md. Ct. Spec. App. 1985).  Moreover, "an express disclaimer [in an employee manual] will relieve the employer of any contractual obligations under the contract."  *Lambert v. Washington Suburban Sanitary Com'n*, 93 F. Supp. 2d 639, 643 (D. Md. 2000) (citing *Fournier*, 569 A.2d at 1301).  Maryland courts have further held that "in order for a disclaimer to be effective in preventing the formation of an employment contract, the disclaimer must be

---

[8] This Court may "consider any documents referred to in the complaint and relied upon to justify a cause of action – even if the documents are not attached as exhibits to the complaint."  *Fare Deals, Ltd. V. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 683 (D. Md. 2001).

'clear and unequivocal." *Elliott v. Board of Trustees*, 104 655 A.2d 46, 102 (Md. Ct. Spec. App. 1995) (quoting *Haselrig v. Public Storage, Inc.*, 585 A.2d 294, 300 (Md. Ct. Spec. App. 1991)).

In this case, the Health Center's Employee Handbook clearly states that "[e]mployment by PCHC is at will of the employer and the employee, and can be ended by either party at any time." Ex 1 to Def.'s Mot. to Dismiss, Emp. Handbook at 3. Additionally, it provides for "at least ten working days' notice prior to onset of" an employee's termination and includes the provisions indicating that the Health Center will comply with the Americans with Disabilities Act and the Federal Medical Leave Act. *Id.* at 7-8, 11, 44-46. However, as mentioned above, the employee manual also includes a "clear and unequivocal" disclaimer indicating that none of these policies create an employment contract. *See id.* at 3. As such, the Health Center's Employee Handbook is not an employment contract and Plaintiff fails to state a claim for breach of employment contract and violation of the personnel manual. Therefore, Defendant's Motion to Dismiss Count IV is GRANTED and the Plaintiff's claim in Count IV is DISMISSED WITH PREJUDICE.

<u>CONCLUSION</u>

Defendant's Motion to Dismiss (ECF No. 5) is GRANTED in part and DENIED in part.  Specifically, Defendant's motion is GRANTED with respect to Counts III and IV, but is DENIED with respect to Counts I and II.  Additionally, Plaintiff's state law claims in Counts III and IV are DISMISSED WITH PREJUDICE.

A separate Order follows.


Dated:        June 27, 2012                        /s/_____
                                                   Richard D. Bennett
                                                   United States District Judge